REVISED OPINION [1]
SCHEB, Acting Chief Judge.
This appeal addresses some of the problems which occurred in a residential development, composed of condominiums, single-family homes and undeveloped parcels, regarding common area maintenance responsibilities.[2] The appellants are: Englewood Golf, Inc. (Developer); Englewood Golf Property Owners Association, Inc. (Homeowners Association); and Englewood Golf Common Property Management, Inc. (Management Company). The appel-lees/cross-appellants are: Englewood Golf Condominium Villas Association, Inc. (Condominium Association) and Englewood Condominium Association, Inc. (Villa XI Condominium Association).
The Developer, the Homeowners Association, and the Management Company challenge the trial court’s declaratory judgment. The judgment denied enforcement of an unrecorded agreement between the Homeowners Association and the Condominium Association, and declined to reform certain condominium documents to include newly built homes, in addition to condominiums, into the maintenance payment scheme. The Condominium Association raises related issues on cross-appeal. We affirm in part and reverse in part.
FACTS
In 1972, the Developer began construction of a “first-class” condominium community, to be composed of 900 units, on a 210 acre tract of land adjacent to State Road 775 near Englewood. The Developer grouped several of the planned condominium units together in areas known as “villas.” The proposed units resembled freestanding single-family homes more than traditional condominiums units.
After the units in Villa I were completed, the Developer recorded a declaration of condominium for that villa, which provided for the creation of a Condominium Association. Construction of additional villas followed. As each new villa was completed, a declaration of condominium, identical to the declaration of condominium for Villa I, was recorded.[3]
At the outset, we clarify several terms which are referenced in the declarations of condominium and whose proper definition is crucial to this opinion. We refer to “common elements,” “common areas,” and “undeveloped areas.”
Section 4.4(a), (b), and (c) of the recorded declarations speak extensively about “common elements,” i.e. those areas over which the Condominium Association was to exercise control and maintenance of which was to be paid proportionately by the unit owners through the Condominium Association:
4.4. Common Expenses
(a) Common expenses, which are also otherwise herein defined, shall include the condominium’s proportionate share of the cost and expense of maintaining, *1053 servicing, repairing and replacing all streets, sidewalks, utility installations of all kinds, drainage facilities and other structures, facilities, improvements, including boundary walls, and area of any kind located on any easements of or through the condominium and on any part of the common elements and limited common elements[4] of the condominium and on other property or condominiums in the vicinity, i.e., in the vicinity of En-glewood Golf Course for purposes to serve this condominium as well as other condominiums developed or being developed or to be developed there by Developer, such common expenses to also include taxes assessed against such property. The proportionate share to be borne by this condominium of such common expenses for purposes which serve this condominium and other condominiums shall be a fraction of which the numerator shall be the number of units in this condominium which have been completed and the denominator shall be the total number of completed units in this and such other condominiums. Within the meaning of the foregoing, a dwelling will be considered completed when a certificate of occupancy thereof has been issued by the Sarasota County Building Department, or its equivalent, following final inspection.
(b)Such common expenses shall include the cost and expense of repairing and maintaining in good condition the roadway known as Golf View Drive which provides this condominium with access from and to State Road 775, and the land adjacent to said roadway and not within this condominium or any other condominiums, to the extent said roadway runs adjacent to this condominium, it being understood that such cost and expense, which shall be paid by the Association to Developer which shall so maintain and repair said property, shall not include monetary profit to, or recovery of investment by, Developer and shall only in-elude such sums as necessary to so maintain and repair said drive and that such common expenses shall also include taxes assessed against said roadway and ' said land adjacent thereto.
(c) Common expenses shall, in addition, include payment by each unit, and its owner, of the fee applicable to a unit pursuant to the contract between the Association and the Developer, or its assigns, for sewage and sewage treatment services, it being understood that, although such fee is initially payable only in such amount by a particular unit owner, all such fees payable under said contract are common expenses of the condominium collectible by the Association from all units by assessment and that, therefore, if one unit owner does not pay the said fee applicable to his unit, said fee is nonetheless owed by the Association to the Developer, payable by all other units to the Association, and collectible by the Association from the defaulting unit owner through methods of collection available as otherwise provided in this Declaration and in the By-Laws in connection with unpaid assessments.
Section 4.4(d) and (e) list various areas in the development to which the Developer retained title and over which it maintained all rights of fee simple ownership except that the unit owners had the right to use these areas. This property is referred to as “common areas”:
(d) In the event a swimming pool or swimming pools or other recreational facilities is or are provided by Developer in the vicinity of the condominium or in the vicinity of, but not on the premises of, the Englewood Golf Course, each Unit Owner shall have the right to use same, and the cost and expense of maintaining and repairing same after their completion (not including any profit to, or recovery of investment by, Developer), and taxes assessed against same, shall be a common expense and shall be paid by the Association to Developer, which shall so *1054 maintain and repair said facilities, provided, however, that the Association shall and does have the option, exercisable at any time by Resolution duly adopted by two-thirds (%) of Unit Owners, to cancel the obligation of the Association and Unit Owners to so pay said costs and expense, at which time said right of use shall also terminate.
(e) At any time and from time to time Developer may, at its option, convey to the Association all of its right, title and interest in and to all or any of the following which may serve this condominium as well as such other condominiums: Said Golf View Drive, sewage treatment plant facilities and premises, and any swimming pool or pools and other recreational facilities. Following any such conveyance or conveyances, the cost and expense of maintaining said property and facilities in first-class condition shall be a common expense, apportioned among condominiums served thereby as provided in subparagraph (a) of this section 4.4, this condominium’s share of same to be apportioned among units in the condominiums as otherwise provided herein for the apportionment of common expenses of the condominium.
Finally, there is undeveloped property adjacent to the common elements, such as the parcel near the gatehouse entrance and in the area of the former sewer plant. This property is referred to as “adjacent undeveloped land.” The record does not disclose an adequate legal description of this property. Moreover, we recognize that additional parcels of land, which are not discernible from the record, may qualify for this category.
Although the declarations grant a nonexclusive easement to individual unit owners over Golf View Drive, the private road which provides the condominium unit owners with the sole access to the development from State road 775, the Developer retains “all its right, title and interest” in the road and adjacent undeveloped land. We note that an elaborate gatehouse entrance is located at the intersection of Golf View Drive and State Road 775, and there is also a large parcel of undeveloped land, which is reserved for future development, adjacent to the gatehouse, Golf View Drive and the condominium area.
In late 1973, the Developer became apprehensive of the legislature making frequent substantive changes to the condominium statute and concluded that a 900 unit dwelling development was too dense for the quality of living desired in the community. Therefore, the Developer decided to revise its original plans and subdivide the remaining property into single-family homesites. The Developer decided to limit construction in the development to a total of 576 dwellings.
In 1974, the Developer recorded the first subdivision plat[5] and created a Homeowners Association to manage the subdivision area. Because there was no master association in the development to coordinate maintenance over common areas used by both condominium unit owners and homeowners, the Homeowners Association and the Condominium Association entered into the “Englewood Golf Residential Area Agreement Between Associations” in February 1975. Pursuant to the agreement, the Condominium Association prepared and obtained its members’ approval of a proposed budget of maintenance expenses. Next, the Condominium Association prorated the total amount of anticipated expenses between the associations based on a ratio of the number of units in each association’s area to the total number of units in the entire development. The homeowners were then notified of the amount assessed and paid their share of the projected expenses to the Condominium Association through the Homeowners Association. An advisory board, comprised of condominium owners, was also established to assist in the budgeting process and to provide input on condominium matters. At the time the February 1975 agreement between the two associations was signed, the Developer was in control of both associations. Although a copy of the agreement with an explanatory letter was mailed to the individuals who *1055 owned the condominium units and single-family homes at that time, it was not publicly recorded.
In 1977, the Developer amended various provisions in the previously recorded declaration of condominium for Villa XI. These changes included adding the words “and subdivisions” to Section 4.4 regarding common elements and area maintenance expense.
In 1978, the transition from Developer control of the Association to unit owner control was achieved when a majority of the Condominium Association board of directors were elected. In February 1981, members of the Condominium Association voted to amend the recorded declarations of condominium to eliminate the Developer’s right to control the Condominium Association, which would govern all property submitted to condominium ownership. In addition, the Condominium Association decided to attempt to prohibit the Developer from using a condominium unit in Villa I as a sales office. The Developer, however, continued its business use of its unit and even made substantial improvements to its office.
In the period between 1978 and 1986, the Condominium Association began to maintain the common elements and those areas described in section 4.4(d) sometimes referred to as common areas. The Association’s maintenance proceeded despite Article 4.4(d), which expressly gives the Developer the right to maintain these areas and pass through the cost to the Condominium Association. The Condominium Association paid for all these expenses solely through its budget although the Homeowners Association joined in proposing the maintenance expense budget of the common elements and common areas the homeowners used. As in the past, the Homeowners Association members were asessed their pro rata share of the expenses and payment was made to the Condominium Association.
Gradually, relations deteriorated between the Condominium Association and the Homeowners Association. The Homeowners Association began to question the Condominium Association’s expenditure of funds. In fact, the catalyst for the instant litigation is just such a dispute, namely a change in the irrigation system at the entrance of the development. Eventually the Homeowners Association’s dissatisfaction with the maintenance provided by the Condominium Association intensified, and in 1985, it requested that the Developer and the Management Company resume direct control over maintaining these areas.
The Developer acknowledged the Homeowners’ request, allegedly due to its belief that inadequate maintenance would adversely affect its future sales in the development. On January 1, 1986, the Developer began maintenance of the common areas from its sales office in one of the condominium units. The Management Company was now responsible for developing an expense budget. The Homeowners Association contributed to the Developer’s budgeted expenses but the Condominium Association refused to do so although its members continued to use the common areas. Further attempts by the two associations to negotiate payment of outstanding bills were unsuccessful.
In May 1987, the appellants filed suit for declaratory relief seeking to require the Condominium Association to pay a portion of certain maintenance expenses incurred since January 1986. The appellants amended their complaint to request that the trial court enforce the February 1975 agreement and reform the condominium documents to reflect the Developer’s original concept of the development as a self-contained, fully-integrated first-class residential community. The developer alleged that inclusion of the language “and subdivisions” in Villa XI’s declaration of condominium was designed to require all unit owners to participate in the payment of common expenses.
The Condominium Association answered claiming that it, and not the developer, had the right to maintain the common areas. The Association contended that the developer had waived its right to maintain and that it was estopped from resuming control over the common areas. In a counter-petition, the Condominium Association sought *1056 to enjoin the Developer and the Management Company from maintaining the common areas and from using its condominium unit in Villa I as its sales office.
By stipulation of the parties, Englewood Condominium Association, Inc. (Villa XI Condominium Association) was added as a defendant in the litigation. With regard to Villa XI, the Condominium Association answered that Villa XI Condominium Association was dissolved in 1978, and the Condominium Association was currently acting for all of the villas, including Villa XI. The Developer, the Homeowners Association, and the Management Company, nevertheless, maintained that the Condominium Association was the de facto association for Villa XI unit owners.
THE TRIAL COURT’S FINDINGS AND ORDER
After a nonjury trial, the court found that the condominium documents for all villas except Villa XI expressly limited the unit owner’s common expense liability to “... this condominium as well as other condominiums developed, or being developed ...” Therefore, the trial court concluded that no reasonable construction of the language in the declarations of condominium could include maintenance expenses for the areas located in the subdivision section of the development in the absence of evidence of a mutual mistake. The court further found that enforcement of the associations’ February 20, 1975 agreement was barred by the statute of limitations and that there had been no substantial compliance with the agreement sufficient to constitute a waiver or estoppel by the Developer. The court noted that all maintenance was performed through the Condominium Association. Finally, the court concluded that the Condominium Association was estopped and had waived its right to prevent the Developer from continuing to use its unit as a sales office.
In an amended partial final judgment, the court ordered:
1.Enforcement of the 1975 agreement is barred by the Statute of Limitations.
2. The unit owners in Phases I through X are liable for common expenses only in so far as the condominium documents require. The Court will not reform the condominium documents to include any expenses that are not specifically set forth therein, and specifically excludes any liability for common expenses for these unit owners for common elements of and expenses of the subsequent subdivision.
3. The Developer has waived and is es-topped and enjoined from asserting its right to maintain, service, and control the areas owned by it adjacent to the condominiums.
4. The Defendant, Condominium Association, shall have the exclusive right to maintain and control and shall do so in a “first class condition” (as referred to in the Condominium Documents), the areas which shall include Golf View Drive to State Road 775, street lighting thereto, swimming pool, and the areas owned by the developer adjacent to the condominiums including the boundary wall, lakes, irrigation systems and facilities therefore, as well as utilities and taxes thereupon. Except for Golf View Drive from State Road 775, to the beginning of the “subdivision” area and the street lighting appurtenant thereto, the Condominium Association shall pay 100% (One Hundred Percent) of the expenses. As to Golf View Drive to State Road 775, and the street lighting appurtenant thereto, for so long as it remains the sole access to “subdivision” properties, by owners of lots in the “subdivision”, then that section shall be maintained on a pro rate basis, that is the denominator of that ratio formula shall be the total number of units built or platted and/or lots constructed upon and/or platted. The numerator shall be 1 (one). That amount shall be paid by each unit owner. If Golf View Drive through the condominium area ceases to be the sole access to State Road 775 for the subdivision, the owners of lots in the subdivision shall pay ½ (One Half) of the amount they would otherwise pay. The Defendant, Condominium Association, shall maintain this *1057 section of Golf View Drive and the street lights appurtenant thereto and the Plaintiff, Homeowners’ Association, and any future Homeowner Association shall collect the pro rata costs of said maintenance from its members and pay it to the Defendant, Condominium Association. The condominium unit owners shall have no use of any common areas or amenities outside the platted condominium area which they do not assist in paying to maintain.
5. No subdivision lot owners shall have use or access to condominium common areas which they do not assist in paying for.
6. Paragraphs 4.4(a) and (b) of the Villas XI Declaration of Condominium clearly obligate the owners of Villas XI to contribute to common expenses within the subdivision in addition to those in the' condominium area. The Villas XI share of expenses shared with the Homeowners’ Association shall be a fraction having as a numerator the number of units in Villas XI (3) and having as a denominator the number of units in Villas XI plus the number of units in other parts of the development (other than Villas I through X) that contribute to expenses. The Villas XI owners have the concomitant right to use common areas and amenities in the same manner as an owner in the subdivision area. In addition thereto, the owners of Villas XI shall have an obligation to pay that share of expenses for the common areas adjacent to the condominium section that they have paid to date. There is no requirement in the Declaration of Condominium for Villas XI requiring the owners of units in Villas XI to pay for any services not enumerated in said Declaration of Condominium and specifically the owners of units in Villas XI are not required to pay for security or any portion of the costs of security.
7. The Defendants claim for injunctive relief to bar the use of the developer’s condominium unit as a sales office is denied. Developer shall have the right to continue to use that unit as a sales office for so long as the condominium and/or subdivision units and lots are being sold by the developer.
8.The Court reserves jurisdiction with respect to the issue of attorneys’ fees in connection with the issue involving the sales office.
ISSUES ON APPEAL
Numerous issues were raised in this timely appeal and cross-appeal. The appellants first contend that the trial court erred in applying the doctrines of waiver and estoppel to divest the Developer of its right to maintain and control common areas of its development. Second, the Developer argues that by failing to limit the Condominium Association’s control over property titled in the Developer, the court has so adversely affected the marketability of its property as to constitute a judicial taking without due process of law. Third, the appellants contend that the trial court erred in refusing to reform the condominium documents to provide for maintenance of the common areas as a unified community. Finally, the appellants argue that the trial court erred in failing to determine and to require payment from the Condominium Association for maintenance expenses since January 1, 1986.
On cross-appeal, the Condominium Association initially claims that the trial court was without jurisdiction to determine the rights of Villa XI unit owners. In addition, the Condominium Association raises subsidiary issues regarding the rights and obligations of Villa XI unit owners. The Condominium Association also challenges a part of the judgment which it contends has the effect of restricting the right of condominium unit owners in Villas I through X from using Golf View Drive in the subdivision area. Lastly, the Condominium Association argues that the trial court erred in failing to award it attorney’s fees since it prevailed below.
A. Condominium Association has rights to maintain common elements
Pursuant to the terms of section 4.4(a)-(c) of the declarations of condominium, the Condominium Association has the right to *1058 maintain the common elements listed therein. These areas have been controlled by the Condominium Association, rather than the Developer, since 1978, and the appellants do not dispute the Association’s right to maintain the common elements.
B. Developer has waived its maintenance rights in common areas
The appellants argue that the Developer has the right to maintain the common areas because it never waived its right in this regard. Furthermore, the appellants contend the developer is not estopped from maintaining the common areas, which the Condominium Association maintained from 1978 to 1986. The Developer claims that it did not intend to relinquish permanently its maintenance rights, but merely allowed the Condominium Association to maintain the common areas with its permission. The Condominium Association urges, however, that the Developer did voluntarily and permanently waive its maintenance rights when it turned over maintenance responsibilities to the Condominium Association. Moreover, the Condominium Association asserts that the Developer is now estopped from reasserting control over common areas because the Condominium Association maintained these areas for several years with the Developer’s acquiescence.
We do not think the doctrine of estoppel is applicable to these facts. Estoppel is appropriate where a party’s conduct has produced a reasonable belief in another party which has induced that party to change its position to its detriment. See Crown Life Ins. Co. v. McBride, 517 So.2d 660 (Fla.1987). Although it may have been reasonable for the Condominium Association to believe that it was responsible for maintenance based on the Developer’s actions, we find no evidence in the record to support the appellees’ claim that the Condominium Association has suffered any detriment because of the Developer’s actions. There is no evidence that the Condominium Association entered into contracts with third parties, which could not be rescinded or canceled should they lose their maintenance rights.
We do, however, find substantial, competent evidence to support the trial judge’s findings and conclusions that the Developer waived its rights to perform its maintenance responsibilities over common areas. Accordingly, it is our duty to affirm the portion of the judge’s order addressing waiver. See Tsavaris v. NCNB Nat’l Bank, 497 So.2d 1338 (Fla. 2d DCA 1986). We note that a declaration of condominium is more than a simple contract since it contains some attributes of a covenant running with the land. Pepe v. Whispering Sands Condominium Association, Inc., 351 So.2d 755 (Fla. 2d DCA 1977). In this regard, the Condominium unit owners’ rights of enjoyment and use may not be readily impaired or diminished. Id. at 757. It is possible, however, for a developer to waive rights retained in a declaration of condominium. In this case, we think the Developer relinquished such responsibilities to the Condominium Association by failing to maintain these common areas from 1978 to 1986 and by acquiescing in the Association’s maintenance.
C. Developer has residual rights in common areas and full rights in undeveloped land
The appellants argue that even if the Developer waived its maintenance rights in the common areas, it did not wáive any other rights in the common areas. Moreover, it retains the full gamut of property rights in the undeveloped land within the development to which it retained “all right, title and interest.” The appellants argue that the trial court’s order does not reflect these rights and that the wording of the order improperly divested the Developer of its residual rights in the common areas and its complete rights in the undeveloped land. The Developer contends that the judgment, as entered, thus constitutes a judicial taking since the order leaves it no rights other than bare legal title.
We agree with the appellants’ claim that by including the term “control” the judgment has the effect of expanding the Con *1059 dominium Association’s maintenance rights to the point of depriving the Developer of its remaining property rights in the common areas and adjacent undeveloped land. Thus, although the Condominium Association is responsible for the day to day maintenance of the common areas in a “first-class” manner, the Developer is otherwise entitled to retain residual control over these areas. Accordingly, on remand, the trial judge shall delete “control” from his order.
Although the Developer has waived its maintenance rights in the common areas, it has never relinquished formally nor has it waived any of its property rights in the undeveloped property located adjacent to the common elements. Thus, the trial court’s order must clearly differentiate between the common areas and the adjacent undeveloped land. Since the amended partial final judgment inadequately identified these lands, the trial judge, on remand, after receiving such additional evidence as he deems necessary, shall precisely define by legal description the common areas to exclude the Developer’s adjacent undeveloped land.
D. No legal basis exists for reformation of condominium documents
The appellants argue that the trial court erred in failing to reform the condominium documents to reflect the Developer’s intent to establish a unified community. As noted, appellants requested that the trial court reform the declarations of condominium for Villas I through X to include the words “and subdivisions” as inserted by the Developer in the declaration of condominium for Villa XI. By such a revision, the Developer sought to require that condominium owners and homeowners share the cost for maintaining all of the common elements and common areas located in both sections of the development, despite the fact that some of those areas are used exclusively by one group. Because the trial judge found no mutual mistake, he refused to reform the documents.
In support of their argument for reformation of the condominium documents, the appellants cite Providence Square Ass’n Inc. v. Biancardi, 507 So.2d 1366 (Fla. 1987) and Beach Place Joint Venture v. Beach Place Condominium Ass’n, Inc., 458 So.2d 439 (Fla. 2d DCA 1984).[6] The appellants argue that Beach Place, which did not involve a mutual mistake or a scrivener’s error, supports their position. In Beach Place, an additional condominium unit was constructed, which caused a change between the plat as proposed, recorded, and “as built.” There, the condominium association claimed that the additional unit was a common element. However, this Court disagreed and simply refused to allow a recording error, which was not made by the developer, to become a windfall to the condominium owners.
We think Beach Place is distinguishable on its facts from the instant case. Unlike Beach Place, here, the Developer intentionally caused a change in the development as originally planned to now include single-family dwellings as well as condominium units. There are significant differences between these two types of housing. See Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971); Chapter 718, Florida Statutes (1987). Moreover, here, the Developer intentionally changed its plans to affect directly the amount of common element maintenance expense each condominium unit owner was required to pay. The record does not reveal any mistake or scrivener’s error, and we cannot require reformation of documents simply to coincide with the Developer’s unexpressed concept of a unified community. Thus, since we find substantial, competent evidence to support the trial judge’s ruling denying reformation, it is *1060 our duty to affirm on this point. See Delgado v. Strong, 360 So.2d 73 (Fla.1978).
E. Determination of unpaid contribution by Condominium Association is necessary
The appellants also requested an accounting of alleged maintenance expense contributions owed by the Condominium Association in their petition for declaratory relief. The appellants contend that the trial court erred in failing to allow an accounting. The Condominium Association maintains that the trial court’s inaction in this regard implied that the appellants had shown no entitlement to such relief.
We find some confusion on this point in the record. The following dialogue, which occurred at the commencement of the non-jury trial before Judge Brownell on April 21, 1987, appears pertinent to this issue:
MR. PATTERSON [counsel for the appellants]: I took the liberty of preparing a summary of the facts and a statement of the issues, which I would submit to the Court, and it really is just a written reiteration of what I have said in my opening today. It’s just something for there to be something on paper. I feel the issues which I have summarized on page three and four in this litigation to be as follows:
[[Image here]]
Item six is what contributions are owed by the condo association for common expenses paid by the owners association. That particular issue, Judge, as well as the issue of the amount of attorneys fees and who may be responsible for those, are items that we have agreed at the pretrial conference would be determined at a later date.
THE COURT: Number six? A.
MR. PATTERSON: Six—
THE COURT: Number six and the attorneys fees?
MR. PATTERSON: Six and Eight, right. It didn’t seem to make any since (sic) to any of us when we had the pretrial conference before to get into who owes what to whom until the principles were established and then go from there.
The sales office is the only issue where attorneys fees are involved as an issue.
THE COURT: Okay. Even though this is Judge Adams’ case, when it’s resolved, step one, be sure you all set that down in front of me.
MR. MOORE [the appellee’s counsel]: Yes, sir.
THE COURT: I’ll make sure he knows that.
MR. MOORE: Yes, sir.
From the foregoing, we conclude that the trial judge intended to address the matter of an accounting after judgment. Moreover, in their motion for rehearing, the appellants cited the court’s failure “to reserve jurisdiction to resolve the issue of the economic issues between the parties, which was stipulated to at trial.” Thus, we think trial judge apparently overlooked this issue when he granted the motion for rehearing and entered the amended partial final judgment. We previously denied the appellants’ motion to relinquish jurisdiction regarding this issue to the trial court during the pendency of this appeal. We now conclude that on remand the trial judge should address this issue.
F. Trial court lacked jurisdiction over unit owners in Villa XI
On cross-appeal the Condominium Association argues that the trial court lacked jurisdiction to proceed in respect to the rights of unit owners in Villa XI. We agree. We recognize that the Condominium Association has purported to act as Villa XI unit owners’ association and its counsel made certain stipulations in court purporting to bind Villa XI. Notwithstanding this fact, we hold that the trial court’s judgment is not binding on unit owners in Villa XI.
First, although Villa XI Association was dissolved in 1978, it was added as a party defendant in the amended complaint in 1986. Section 607.297, Florida Statutes (1987), provides that a cause of action against a dissolved corporation only remains viable for a three year period after the corporation is dissolved. Second, even *1061 if the appellants’ claims were viable, neither Villa XI Condominium Association, the members of its last board of directors as trustees, nor the Villa XI unit owners were served with process. A defendant is entitled to service of process before jurisdiction of the trial court is invoked. Federal Ins. Co. v. Fatolitis, 478 So.2d 106 (Fla. 2d DCA 1985). Villa XI Condominium Association filed no pleadings and was not represented by counsel in the proceedings below.
Lastly, we find no evidence that control of the dissolved association was formally relinquished to the Condominium Association such that the Condominium Association could accept service on behalf of the dissolved corporation. In view of our decision on this issue, the subsidiary points raised by the Condominium Association concerning contributions for common expenses by Villa XI unit owners are moot.
G. Restricted use of Golf View Drive is proper
As noted, the trial court declared that “the condominium unit owners shall have no use of any common areas or amenities outside the platted condominium area which they do not assist in paying to maintain.” We find the trial court’s order consistent with the Condominium Association’s position that it is not required to contribute to common area maintenance beyond the condominium area and with the trial judge’s overall resolution of this difficult controversy. Therefore, we reject the Condominium Association’s challenge to this provision of the judgment.
We note that the record reveals that the easement granted to the condominium unit owners for Villas I through X provides for ingress and egress “over that certain roadway known as Golf View Drive which provides this condominium with access from and to State Road 775.” The restriction imposed by the trial court does not violate the condominium unit owners’ easement rights since at the present time condominium unit owners can access Golf View Drive without traversing that portion of the roadway located in the subdivision area which the unit owners do not assist in maintaining. As drafted, the trial judge also provided for the contingency that access to Golf View Drive would be available at two locations in the future. Regardless, the restriction now imposed by the trial court cannot be construed to prevent condominium unit owners from using Golf View Drive as invitees of the subdivision owners. On remand, the trial judge should so provide.
H. No error in denying attorney’s fees to Condominium Association
Article 14.1(b) of the Declaration of Condominium for Villa I states “In any proceeding arising because of an alleged failure of a unit owner or the Association to comply with the terms of this Declaration ... the prevailing party shall be entitled to recover ... reasonable attorneys’ fees as may be awarded by the Court.” Citing Article 14.1(b), the Condominium Association argues that the trial court erred in failing to award it attorney’s fees. We disagree. The cited article is directed toward the obligations of a unit owner and the enforcement of those obligations by the Association or other unit owners and not matters involving the Developer. Consequently, the only basis for an award of attorney’s fees to either party would have been the Condominium Association’s attempt to enjoin the Developer, as a unit owner, from unauthorized use of a residential unit. The Developer prevailed on this point, and the Condominium Association did not raise this ruling on appeal. We note the trial court reserved jurisdiction with respect to the issue of attorney’s fees in connection with the issue involving the sales office.
CONCLUSION
Accordingly, we reverse in part the trial judge’s amended partial final judgment and remand for further proceedings. On remand, the trial judge shall enter an amended judgment consistent with this opinion which shall:
(a) revise paragraph 3 and 4 to specifically identify by legal description the common areas the Developer has *1062 waived its right to maintain and delete the words “and control” in reference to this property and distinguish this from the undeveloped land;
(b) permit the use of that part of Golf View Drive in the subdivision by condominium unit owners who are invitees of subdivision owners;
(c) eliminate paragraph 6 relating to Villa XI; and
(d) address the appellants’ contention that it has a right to an accounting.
Otherwise, we affirm. In refashioning its judgment, the trial court may, in its discretion, receive additional evidence in respect to points (a) and (d).
THREADGILL and PATTERSON, JJ„ concur.

. The opinion of this court filed May 17, 1989 was withdrawn by order of the court on August 25, 1989, and this revised opinion substituted therefor.

. We note that the development in this case was initially planned as an exclusive condominium community in accordance with Chapter 711, Florida Statutes (1971), and since that time, the legislature has made significant changes to the statutes governing such developments.

.Although reference is made to Villas I through XI in this litigation, the appellants point out that Villa VIII does not exist.

. Section 3.9 of the declarations of condominium defines "limited common elements” to include the areas directly in front of the individual units and eight feet to each side. Section 5.3(b) provides that expenses for the limited common elements were to be borne by the individual unit owners.

. Additional subdivision plats were recorded until 1985.

. In Providence, the Florida Supreme Court approved reformation of a declaration of condominium "where due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument.” While conceding that there was no mutual mistake established below, Appellants contend that reformation is nevertheless appropriate to insure that the parties "receive substantially the same interest they bargained for."