Mr. William R. Lisch Bradenton City Attorney 519 13th Street West Bradenton, Florida 34205
Dear Mr. Lisch:
You ask substantially the following question:
What is the meaning of the term "self-contained retirement community" as used in section 316.2125(1), Florida Statutes, which authorizes the use of golf carts within such communities?
Section 316.212, Florida Statutes, prohibits the operation of golf carts on the public roads or streets of this state, except under specified conditions.[1] Section 316.2125(1), Florida Statutes, however, provides:
"Notwithstanding the provisions of s. 316.212, the reasonable operation of a golf cart, equipped and operated as provided in s. 316.212(4), (5), and (6), within any self-contained retirement community is permitted unless prohibited under subsection (2)."[2]
Subsection (2) of section 316.2125, Florida Statutes, authorizes a county, municipality, or the Department of Transportation to prohibit the operation of golf carts on any street or highway under its jurisdiction if it determines that such prohibition is necessary in the interest of safety.
The term "self-contained retirement community" is not defined in the statute, nor does the term appear elsewhere in the statutes. Moreover, a review of the legislative history failed to reveal a definitive explanation of the term's meaning. In explaining the amendment that added this provision on the floor of the House of Representatives, the amendment's sponsor stated that "basically what [the amendment] does is to allow the operation of the golf carts within that community and they don't have to be around a golf course."[3] The primary purpose of statutory construction is to ascertain and effectuate the intent of the Legislature.[4]
In the absence of a statutory definition, words are generally construed in their plain and ordinary sense; if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.[5]
The term "self-contained" is generally defined as complete, self-controlled or sufficient in itself,[6] while "community" has been interpreted as a body of individuals organized into a unit or manifesting some unifying trait.[7] You note that under the common definition of the term "self-contained" as selfsufficient or independent, the streets of the retirement community would be privately owned and not open to the public for vehicular travel.[8]
This office has previously stated that the provisions of Chapter 316, Florida Statutes, are enforceable on private property only when the public has a right to travel by motor vehicle on such property.[9] This conclusion is based on the language of section 316.640, Florida Statutes, which provides, in part, that counties and municipalities shall enforce state traffic laws on all streets and highways "wherever the public has the right to travel by motor vehicle."[10] It is the availability of the area or place for travel and the right of general and common use which makes certain private property subject to public control pursuant to Chapter 316, Florida Statutes.
You therefore note that if the phrase "self-contained retirement community," as used in section 316.2125(1), Florida Statutes, refers only to a community where the streets of the retirement community are privately owned and not generally open to the public, the provisions of Chapter 316, and more specifically, sections 316.212 and 316.2125, would not be applicable.[11] Thus, the authorization in section 316.2125 for golf carts to be operated within a self-contained retirement community would be meaningless since the prohibitions against golf cart operation would not be applicable.
Provisions enacted by the Legislature must be assumed to have some useful purpose, as the Legislature is not to be presumed to have enacted useless or meaningless legislation.[12] Clearly, then, the Legislature intended the provisions of section 316.2125, Florida Statutes, to include retirement communities with roads that are open to the public for travel. Rather, the term "self-contained retirement community" appears to refer to internally managed and maintained retirement communities that are identifiably separate from the areas surrounding them.[13] As noted above, the legislative history indicates that the legislation was intended to permit the use of golf carts on the streets of such retirement communities and not limit the use of golf carts to those areas around a retirement community's golf course.
Accordingly, I am of the opinion that the use of the term "self-contained retirement community" in section 316.2125(1), Florida Statutes, does not limit the use of golf carts to those retirement communities that maintain private roads on which the public does not have the right to travel, but includes retirement communities with roads open to the public.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 316.003(68), Fla. Stat., which defines "golf cart" for purposes of Ch. 316, Fla. Stat., to mean "[a] motor vehicle designed and manufactured for operation on a golf course for sporting or recreational purposes."
[2] See s. 316.212(4), (5) and (6), Fla Stat., which provides:
"(4) A golf cart may be operated only during the hours between sunrise and sunset, unless the responsible governmental entity has determined that a golf cart may be operated during the hours between sunset and sunrise and the golf cart is equipped with headlights, brake lights, turn signals, and a windshield. (5) A golf cart must be equipped with efficient brakes, reliable steering apparatus, safe tires, a rearview mirror, and red reflectorized warning devices in both the front and rear. (6) A golf cart may not be operated on public roads or streets by any person under the age of 14."
[3] Floor Debate on HB 79, House of Representatives, May 16, 1988, Tape 1 of 2, Side B.
[4] See, e.g., Ervin v. Peninsular Telephone Company, 53 So.2d 647
(Fla. 1951) (Supreme Court has duty in construction of statutes to ascertain Legislature's intention and effectuate it); State v. Webb,398 So.2d 820 (Fla. 1981) (legislative intent is the polestar by which the courts must be guided); Op. Att'y Gen. Fla. 94-37 (1994) (paramount rule of statutory construction is to ascertain the intent of the Legislature).
[5] Sieniarecki v. State, 756 So.2d 68, 69 (Fla. 2000); FrankenmuthMutual Insurance Company v. Magaha, 769 So.2d 1012, 1013 (Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary).
[6] See, e.g., Webster's Third New International Dictionary SelfContained p. 2059 (unabridged ed. 1981); The American Heritage Dictionary of the English Language (fourth ed. 2000) (constituting a complete and independent unit in and of itself).
[7] See, e.g., Webster's Third New International Dictionary Community
p. 460 (unabridged ed. 1981); Black's Law Dictionary p. 350 (revised fourth ed. 1968) (neighborhood; a society of people living in the same place under the same laws and regulations, who have common rights, privileges, or interests).
[8] See s. 316.003(33), Fla. Stat., defining "private road or driveway:
"Except as otherwise provided in paragraph (53)(b), any privately owned way or place used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons."
And see, s. 316.003(53)(b), Fla. Stat., referring to "[t]he entire width between the boundary lines of any privately owned way or place used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons, or any limited access road owned or controlled by a special district, whenever, by writtenagreement entered into under s. 316.006(2)(b) or (3)(b), a county ormunicipality exercises traffic control jurisdiction over said way orplace[.] (e.s.)
[9] See, e.g., Ops. Att'y Gen. Fla. 90-68 (1990) (no authority to enforce Ch. 316, Fla. Stat., on private roads located within a private development or over roads or streets within a special taxing district where such byways are not available for public use, absent a written agreement entered into pursuant to s. 316.006(2)(b), Fla. Stat.), 88-05 (1988), 86-59 (1986) (municipal police department not authorized to enforce provisions of Ch. 316, within park and recreation district created by special act since general public not permitted to travel by motor vehicle therein); and 83-84 (1983) (if access to and common use of roads on private property not generally available to public but legally limited by recorded restrictive covenants to persons having express or implied permission from owner, then provisions of Ch. 316 are not applicable and municipal police department does not have right or obligation or authority to enforce Ch. 316 on such private property regardless of invitation by private property owner to police department).
[10] See s. 316.640(2)(a) and (3)(a), Fla. Stat., respectively.
[11] A limited exception exists for those private communities that have entered into an agreement with the governing body of a municipality or county for such governmental entity to exercise traffic control jurisdiction over the private roads. See s. 316.006(2)(b) and (3)(b), Fla. Stat. An agreement entered into pursuant to s. 316.006 must provide for reimbursement for the actual costs of traffic control and enforcement and for liability insurance and indemnification by the party or parties who own or control such road or roads.
[12] Smith v. Piezo Technology and Professional Administrators,427 So.2d 182 (Fla. 1983); Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); Neu v. Miami Herald Publishing Company, 462 So.2d 821, 822 (Fla. 1985) (in construing legislation, courts should not assume Legislature acted pointlessly); Sharer v. Hotel Corporation of America, 144 So.2d 813,817 (Fla. 1962) ("it should never be presumed that the Legislature intended to enact purposeless, and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down").
[13] Compare Englewood Golf, Inc. v. Englewood Golf Condominium VillasAssociation, Inc., 547 So.2d 1050 (Fla. 2d DCA 1989) (referring to a residential development, composed of condominiums, single-family homes and undeveloped parcels, subject to virtually identical covenants, conditions and restrictions, administered by a community association, as a self-contained residential community). Cf. In re Appeal of Chapel HillResidential Retirement Center, Inc., 299 S.E.2d 782 (1983), disc. reviewdenied, 302 S.E.2d 249 (1983) (considering a center consisting of 230 apartments, a 60 bed health center, service facilities, a dining hall, a social hall, a gift shop, lounge areas and recreational facilities to be a "self-contained community" designed for elderly residents); Driscollv. Harmon, 601 P.2d 1051 (Ariz. 1979) (Luke Air Force Base is a self-contained community including houses, stores and recreational areas); Lakemoor Community Club, Inc. v. Swanson, 600 P.2d 1022 (Wash Ct. App. 1979) (referring to integral unit of residences with a single entrance and exit precluding any through traffic to adjacent areas as a self-contained residential community).